# Southern Steel Co. *v.* Hopkins, *et al.*

*Bill to Determine Liability and to Prevent a Multiplicity of Suits.*

(Decided Feb. 13, 1908.   Rehearing denied July 3, 1908.
47 Suth. 274.)

1. *Corporations; Consolidation; Rights of Successor.*—A successor of a corporation which had been sued at law on a liability existing before consolidation can assert all the rights and equities and defenses that the original corporation could assert, it having succeeded to the merged corporations' respective rights, etc., and become liable for their debts, etc.

2. *Equity; Pleading; Motion to Dismiss.*—A motion to dismiss is not available to reach defects which could have been cured by amendment, and hence, if the name of the merged corporation was essential on a bill by the successor of the consolidated corporation to enjoin a multiplicity of suits based on alleged negligence of one of the merged corporations, this defect could have been cured by amendment on special objection thereto, and was not available on motion to dismiss.

[Southern Steel Co. v. Hopkins, et al.]

3. *Actions; Defenses.*—The right of defense and a form of defense efficient and practical as the nature of the transaction will reasonably admit are rights as sacred as the corresponding rights of action or prosecution. to obtain remedy.

4. *Injunction; Multiplicity of Suits.*—Where it apepars that 110 separate suits have been filed against one corporation seeking to recover for the negligent death of as many persons killed in a mine explosion and that the plaintiffs are insolvent, and that the company's defense could not be properly presented at law because of the fact that many of the cases would be on trial in different courts at the same time and that the cost of the litigation would be ruinous to the corporation though the defense be established, a bill will lie to enjoin the suits until a determination of a defense applicable alike to all the suits although the defense has not been established at law.

5. *Same.*—Where numerous parties jointly and severally claim against one, or where one claims against many liable jointly or severally, and the same title or right of defense will be in issue and will determine the issue for or against all, equity will interpose to avoid a multiplicity of suits without the aid of any independent equity; this is subject, however, to the rule, that a bill will not lie where there is a plain, adequate and complete remedy at law, and does not infringe the rule preventing a mingling of one suit of entirely distinct causes of action between different parties.

5. *Jury; Right to Jury Trial; Infringement.*—It being a cardinal principal of the common law that a right to trial by jury must give way to an appeal to equity when, from the nature of the situation, the transaction should be investigated, and the relegation of the parties to that transaction to the ordinary proceeding at law would not sufficiently administer justice, it is not an infringement of the constitutional right to jury trial to allow a bill to enjoin a multiplicity of suits based on one act of negligence, pending a determination of a defense applicable to all the suits, since the guaranty of a right to trial by jury refers to and is co-extensive only with the common law right then existing.

APPEAL from Jefferson chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by the Southern Steel Company against Wiley Hopkins, administrator, and others, to enjoin 110 suits at law pending the determination of a defense applicable to each. From a decree dismissing the bill complainant appeals. Reversed and rendered.

CAMPBELL & JOHNSON, for appellant. "Where one party is subjected to numerous and vexatious actions at law, he may come into chancery because the necessity for numerous suits, or defenses to numerous suits at

[Southern Steel Co. v. Hopkins, et al.]

law is in itself such a wrong and vexation as vests him with an equity," provided there be some common question or defense which will be decisive of all the actions. —*Turner v. City of Mobile*, 135 Ala. 73. The jurisdiction of a court of equity will be exercised in suits by a single party against a number of persons to restrain the prosecution of simultaneous actions at law brought against him by each defendant, and to procure a decision of the whole in one proceeding, where all of the actions depend upon the same law and facts."—*Cleveland v. Ins. Co.*, (Ala. 44 South. 37. When the jurisdiction is invoked by a single complainant against several to whom his interest is separately opposed he must show that the interests of the defendants are related to each other as being connected with, or convergent in, the property right or question involved in the suit."— *Jones v. Hardy*, 127 Ala. 221. It is not conceived to be necessary, in bills of peace, that there should appear to be any privity or connection between the defendants. *Morgan v. Morgan*, 3 Stew. 383; *Mayor of York v. Pilkington*, 1 Atk. 282; 26 Reprint 180; *Kennedy v. Kennedy*, 2 Ala. 571; *County of Dallas v. Timberlake*, 54 Ala. 403; 15 Enc. P. & P. 675, et. seq. "The weight of authority is simply overwhelming that the jurisdiction (to enjoin numerous actions at law) may and should be exercised on behalf of a single party against a numerous body, although there is no 'common title,' or 'community of right,' or of 'interest in the subject matter,' among these individuals, but where there is and because is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained against each individual member of the numerous body."—Pomery's Equity Jurisprudence (3rd Ed.) Sec. 269, 274; 16 Cyclopedia of Law, 64, 65; *Mayor*

12 R.

[Southern Steel Co. v. Hopkins, et al.]

*of York v. Pilkington,* 1 Atk, 282, 26, Reprint 180; *Sheffield Water Works v. Yeomans,* L. R. 2 Ch., 8; *Hale v. Allison,* 188 U. S. 77, 47 L. Ed. 380; *Morgan v. Morgan,* 3 Stew. (Ala.) 383; *Cleveland v. Insurance Co.,* 44 South. 37; Bispham on Equity (7th Ed.) sec. 417, p. 576; *Wyman v. Bowman,* 127 Fed. 263; *Milwaukee Elec. Ry. Co. v. Bradley,* 108 Wis. 467, 84 N. W., 870; *Southern Pac. R. R. Co. v. Robinson,* 132 Col 408; *Lehigh Valley R.· R. Co. v. McFarlan,* 31 N. J. Eq. 730; 3 Current Law, p. 1216; *Amer. Cent. Ins. Co. v. Landau,* 56 N. J. Eq. 543; 39 Atl. 400; Kerr on Injunctions, p 135; *L. N. A. & C. Ry. Co. v. Imp. Co.,* 57 Fed. 45; *Osborne v. Wis. Cent. R. Co.,* 43 Fed. 824; *DeForest v. Thompson,* 40 Fed. 375, 378; *Carlton v. Newman,* 77 Me. 408, 1 Atl. 194; 14 Harvard Law Review, 612; *Kellog v. Chenango Bank,* 42 N. Y. Supp. 379; *Guess v. Stone Mountain &c Co.,* 67 Ga. 215; 16 Cyc. p. 66 Article "Equity;" *Bailey v. Tillinghast,* 99 Fed. 801-806-807; *N, Y. etc. R. R. Co. v. Schuyler,* 17 N. Y., 592; *Boyd v. Schneider,* 131 Fed. 223; *Va. Car etc. Co. v. Home Ins. Co.,* 51 C. C. A. 21; *Hightower v. M. J. etc. R. Co.,* 36 South. 82; 102 Am. St. R. 476; *Smith v. Bank,* 45 Atl 1082; Ca. Ci. Note, Sec. 261 Pomeroy's Eq. (4th Ed.); *Crawford v. R. R. Co.,* 83 Miss. 708; *Tisdale v. Ins. Co. North America,* 36 South. 568; *I. C. R. R. Co. v. Garrison,* 81 Miss, 257, 32 South. 996; *Henderson v. Hall,* 134 Ala. 455, 32 South. 840; *Gulf Red Cedar Co. v. Crenshaw,* 138 Ala. 134, 35 So. 50. A bill filed to restrain the prosecution of a multiplicity of actions at law, sounding in tort, can not result in the assessment by the chancery court of damages for injuries to the person or reputation since the complainant who seeks the interference of the chancery court must aver and prove that he has a defense to the actions enjoined; and if he fails to establish his common defense his bill will be dismissed

and the actions at law will proceed.—*B. & A. R. R. Co. v. L. & N. R. R. Co.,* 44 South. 679, 683; 14 Harvard Law Review, 611, 612; *I. C. R. R. Co. v. Garrison,* 32 South. 996; *Mayor of York v. Pilkington,* 1 Atk. 282; 26 Reprint 180. The jurisdiction for the prevention of a multiplicity of vexatious actions at law is a part of the chancery jurisprudence of Alabama, and the exercise thereof can not be said to deprive plaintiffs at law of any right to trial by jury.—*Mayor of York v. Pilkington,* 1 Atk. 282; *Morgan v. Morgan,* 3 Stew. 383; Affirmed, *Cleveland v. Ins. Co.,* 44 South. 37.

FRANK S. WHITE & SONS, CALDWELL & CARMICHAEL, BOWMAN, HARSH & BEDDOW, ROBERT N. BELL, B. M. ALLEN, GEORGE P. BONDURANT, JOHN C. CARMICHAEL, W. K. TERRY, D. B. ANDERSON, SAM WILL JOHN, JOHN S. KENNEDY, H. K. WHITE, and SMITH & SMITH, for appellees. Counsel rely for an affirmance upon the following cases.—*Turner v. Mobile,* 135 Ala. 73; *Tribette v. Ill. C. R. R. Co.,* 35 Am. St. Rep. 642; *Ducktown Sulphur Co. v. Fanc,* 70 S. W. 813; *Ritchie v. Dorlan,* 6 Cal. 40; *Shulinburg v. Town of Hayward,* 20 Fed. 425; *Scottish U. Ins. Co. v. Mohlman,* 73 Fed. 68; *Dodd v. City of Hartford,* 25 Conn. 236; *Swift v. Larrabee,* 31 Conn. 239; *Doggett v. Hardt,* 58 Am. Dec. 468; *Woodward v. Sealy,* 50 Am. Dec. 445; *Storrs v. P. & A. R. R. Co.,* 11 South. 229; *Booneville Nat. Bank v. Blakey,* 76 N. E. 534; *Hale v. Allison,* 188 U. S. 78; *Merrill v. Lake,* 47 Am. Dec. 380; *Harden v. Swope,* 47 Ala. 276; *National Tube Co. v. Smith,* 50 S. E. 719; *School Dist. v. Rice,* 81 Pac. 155; *Scott v. Erie R. R. Co.,* 30 N. J. E. 355; *Thampkins v. Craig,* 93 Fed. 835; *Scott v. Neeley,* 140 U. S. 106, 35 L. Ed. 358; *Elridge v. Hill,* 2 Johns. 281; *N. T. R. Co. v. Amacker,* 49 Fed. 529, 74 U. S. App. 33; Same case in 46 Federal 283; *Manchester Fire Ins. Co. v. Stockton,* 38 Fed. 378; *Dodge v. Briggs,* 27 Fed. 160.

TYSON, C. J.— Two questions only are involved in this appeal: One, whether the appellant was a party who could file the bill; second, whether the court has jurisdiction of the case made. The lower court dismissed the bill for want of equity, deciding both points against the appellant.

The appellant is the resultant  or successor and as· sign by consolidation of two corporations—one the Alabama Steel & Wire Company, and the other the Underwood Coal & Iron Company—in December, 1905. The Alabama Steel & Wire Company having been sued at law on a liability existing prior to the consolidation, the first question is: Can the appellant, the new company, assert the rights, equities, and defenses of the wire company, as set up in the bill in this case. We think there ought to be no doubt about this right. The appellant is the successor in law of the merged companies. It succeeds to all their respective rights, privileges, powers, and franchises, and becomes liable for all their debts, liabilities, and duties, and thus plainly has the right to defend and prosecute suits at law and in equity for the protection of its rights, the same as the original companies could do. The original company in this case in all prosecutions and defenses in its name would necessarily act for and under the control of the new company. The policy of the law and the character of the change affected by the consolidation of the corporations are shown by section 1151 of the Code, and by Gen. Acts 1903, pp. 331, 332, § 40. See *Johnson v. State*, 88 Ala. 176, 7 South. 253. If the name of the original corporation was essential in this proceeding on special objection urging and showing such  necessity, the defect could easily have been cured by amendment, and therefore was not available on motion to dismiss.

The second question is whether the bill is properly filed as one to avoid a multiplicity of suits. An explo-

sion occurred in a mine owned by the wire company, by which 110 persons lost their lives, and 110 separate suits were brought by their representatives to recover damages for alleged negligence by the owner of the mine, in which the accident occurred. The appellant, alleging that the wire company (and it, as its successor) has a perfect defense applicable alike to all these suits, filed the bill in this case to enjoin actions at law until this defense could be determined. The question abstractly is whether the court has jurisdiction of any case of this kind; for, if it has, this case must come within the rule, since the allegations show that, though the defense be perfectly good, it would be impossible for appellant to properly present the same at law, because many of the cases would be on trial in different courts at the same time, and further show that the expenses and costs of the litigation at law would be ruinous, though successful against every plaintiff.

It is objected, by the appellees, that the negligence alleged being a several and separate wrong as to each party injured, and there being no privity or common interest between the defendants in the actions at law, the court of chancery has no jurisdiction to enjoin their suits to avoid a multiplicity of suits. The principle upon which this jurisdiction is established is that it is the duty of the government to furnish a full, adequate, and complete remedy for the assertion and protection of all property rights of its citizens; and this bill is filed upon the idea that it is the peculiar function of the chancery jurisdiction to supplement the law courts and to give such remedy when it does not exist at law in a way "as practical and efficient to the ends of justice as the remedy in equity," and that there is no plain, adequate, complete, and practical remedy for appellants' protection in the courts of law.—*Boyce v. Grundy*, 3 Pet. (U. S.) 210, 7 L. Ed. 655; *Oelrich v. Spain*, 15 Wall.

(U. S.) 211-228, 21 L. Ed. 43; *Allen v. Hanks,* 136 U. S. 311, 10 Sup. Ct, 961, 34 L. Ed. 414.

The right of defense, and of a form of defense as efficient and practical as the nature of the transaction will reasonably admit of, are rights as sacred as the corresponding rights of prosecution for the assertion of property rights. There can be no distinction, nor is there any, between the right to an efficient remedy for defense and one for the reclamation of property, as protection in the acquisition and in the defense of property is only the application of the same principle of security in different forms.—*Brown v. New Jersey,* 175 U. S. 175, 20 Sup. Ct. 77, 44 L. Ed. 119; *West v. Louisiana,* 194 U. S. 258-263, 24 Sup. Ct. 650, 48 L. Ed. 965.

Independent of special grounds for proceeding in equity, the court at an early date assumed a jurisdiction to prevent a multiplicity of suits by settling in a single case a right or transaction which at law involved the trial of numerous cases, entaining loss of time and perhaps ruin in costs. 1 Spence's Equitable Jurisdiction, 657; *Lord Tenham v. Herbert,* 2 Atk. 483; *Hanson v. Gardner,* 7 Ves. 309, 310. Lord Hardwicke, in the Case of *Tenham, supra,* expressed the rule as to when a bill of this kind could be filed and when the right must first be established at law. Not quoting the authorities cited in 26 English Reports (Reprint) 692, sustaining his position, he said: "Undoubtedly, there are some cases in which a man may, be a bill of this kind, come into this court first; and there are others where he ought first to establish his right at law. It is certain, where a man sets up a general exclusive right, and where the persons who controvert it with him are very numerous, and he cannot, by one or two actions at law, quiet that right, he may come into this court first, which is called a 'bill of peace,' and the court will direct an issue to

[Southern Steel Co. v. Hopkins, et al.]

determine the right, as in disputes between lords of manors and their tenants, and between tenants of one manor and another; for in these cases there would be no end of bringing actions of trespass, since each action would determine only the particular right in question between the plaintiff and defendant. As to the case of the *Corporation of York and Sir Lionel Pilkington,* 1 Atk. 282, the plaintiffs there were in possession of the right of fishing upon the river Ouse for nine miles together, and had constantly exercised that right, and as this large jurisdiction entangled them with different lords of manors it would have been endless for the corporation to have brought actions at law. But where a question about a right of fishery is only between two lords of manors, neither of them can come into this court till the right is first tried at law."

This we consider as expressing the rule of law; the principle dictating the rule being the duty and necessity of affording a practical and efficient form of remedy for protection to persons and property founded in the very conception of government. 6 Ency. Law (2d Ed.) 972. If this case falls within the rule, the allowance of the proceeding is no infraction of the constitutional right of trial by jury, for that guaranty refers to, and is co-extensive only with, the common-law right then existing, and it was always a principle of the common law that the trial by jury must give way to an appeal to equity, when from the nature of the situation, the transaction to be investigated, and the relation of the parties to that transaction the ordinary proceeding at law would not answer sufficiently the purpose of administering justice.—*Boring v. Williams,* 17 Ala. 510; *Oelrich v. Spain,* 15 Wall. (U. S.) 211-228, 21 L. Ed. 43; *Cook v. Schmidt,* 100 Ala. 582, 13 South. 686; 6 Ency. Law (2d Ed.) 972-974. It is the duty of affording an

efficient and speedy and economical administration of justice which evoked and established the principle of jurisprudence under which a court of equity interferes to avoid a multiplicity of suits. This principle, then, is established by the application of reason to the circumstances of the particular case, and, of course, it can have no other limit than that of reason. The classification by the text-writers and courts of the instances in which a particular jurisdiction founded on a general principle has been exercised may be a guaranty of safety in following in their footsteps; but it is only a recognition of the controlling principle, and does not by any means restrict the principle itself.

The question here, then, is, what is the principle upon which equity interferes to avoid a multiplicity of suits? In determining this, it may be borne in mind that the jurisdiction is not to be invoked when the remedy at law is plain, adequate, and complete, and that no court has the right to infringe upon the wholesome doctrine of multifariousness which prevents a mingling in one suit of entirely distinct and separate causes of action between different parties. Subject to these restrictions, the principle and rule is that where numerous parties are jointly and severally claiming against one, or where one is claiming against many liable jointly or severally, and the same title or right of defense will be called in question, and will be determinative of the issue for or against all, a case for the interposition of equity to avoid a multiplicity of suits is made without the aid of any independent equity. The fact that this unity of claim or defense frequently or generally arises from privity or joint action by or between the many affords an obvious instance of the application of the rule, and it has induced some to suppose that the junction and unity of interest calling for the application of the rule

[Southern Steel Co. v. Hopkins, et al.]

is limited to such cases. But the association and unity of interest in the many as to the other party may be brought about just as well by the nature of the transaction or the situation and relation of the parties, independent of all privity or joint action. And therefore privity, or joint right, or liability, although good examples for the application of the principle, afford no test for the propriety of its application.

The case made by the bill in this case is this: An explosion in a coal mine killed 110 persons. The several administrators of these persons have brought several suits against the appellant as the owner and operator for damages, insisting that its negligence was the proximate cause of the accident. The appellant in effect says, if these actions are allowed to proceed at law, it will be ruined in costs and expenses, though it be successful in every suit; that the plaintiffs are all insolvent, and thus could not pay the taxed costs against them, should they be unsuccessful; that the suits are pending in different courts, and will be called for trial in different courts at the same time; that by reason of this, and the necessity of having the same witnesses in each trial, it is impossible for the defendants to present a proper defense to these multitude of claims. The appellant says, moreover, that it has defenses to all these suits, which will be put forward in each case, and which will be determinative of all alike; and on this ground it is insisted that this is a plain case for the application of the jurisdiction of a court of equity to avoid a multiplicity of suits. We agree with this contention on principle.

The first thing to obliterate from the mind in considering the question is that it is immaterial how the unity of title, claim, or defense is brought about. It is the factum of a single title against many, or a common defense against many, which is the foundation of the

jurisdiction. A vested right of property and a vested cause of defense for protection against liability stand precisely on the same basis; and whence and how such right originated is wholly immaterial. 8 Cyc. 911; *Pritchand v. Norton,* 106 U. S. 124, 132, 1 Sup. Ct. 102, 27 L. Ed. 104. If the unfortunate persons who lost their lives by the explosion had jointly leased the mine, and their administrators had instituted several actions as in this case against the owner, it is conceded that the privity between the plaintiffs established by the contract would justify a bill to have the question of liability determined in one suit. But why? Only because a single and common defense would, if successful, determine all the suits. Suppose, however, the owner leased to a third party, instead of the operators and the same accident happened, and a thousand suits were brought or threatened by solvent, or especially by insolvent, parties, what reason is there for, or could there be for, denying the jurisdiction to enforce in a single suit the common cause of defense against all? Ingenuity, we think, cannot discover a substantial distinction between the two cases under which the owner in one instance may take shelter in a court of equity against the wrongful and vexatious suits, while in the other he must submit to financial ruin in defending a thousand vexatious actions at law.

We now examine the precedents to show that the great legal minds who have administered the principles of equity in the past do not disagree with this conclusion. In the *Case of Lord Tenham,* 2 Atk. 484, the master builder of equity jurisprudence, whose words we have quoted above, lays it down as clear and certain that when a general right is set up, and is disputed by many, the party may come into equity in the first instance against the many, and have that right determined

in one suit; for if this could not be done there would be
no end of bringing actions of trespass, since each action
would determine only the particular right in question
between the plaintiff and defendant.   Suppose the case
was reversed, and the many had already instituted their
separate suits; would not the principle announced enti-
tle the party having a common defense against all,
through a "general right," to claim the aid of the court
for a settlement of liability vel non in a single suit?
Clearly so.   It is the general vested right in property,
or common cause of defense for the protection of prop-
erty, which opens the field for the operation of the prin- ·
ciple.   In the case of *Mayor of York v. Pilkington,* 1
Atk. 282, the same great judge laid down the rule in
language which covers this case.   There the suit was to
establish a right of fishing against a number of defend-
ants not connected by title or privity.   At first a de-
murrer was sustained by the Chancellor, but on reargu-
ment he said he had changed his mind, saying that it
matters not about privity of any sort, nor about a gen-
eral right on the part of the defendants; that the ques-
tion as to such bills "is whether the plaintiffs have a
general right to the sole fishing, which extends to all
the defendants."   This case has been followed and ap-
proved in England to the present day.   One of the most
interesting applications is in the case of *Sheffield Water-
works v. Yeomans,* L. R. 2 Chan. Appeal Cases, 8, de-
cided in 1866.   In that case a reservoir of the water com-
pany had burst, and 7,315 persons lost their lives or had
their property injured, and many were prosecuting
claims against the company.   The bill was filed to test
the liability in a single suit, and was sustained.   The
Vice Chancellor defined the case for a bill of peace as
being one in which "there were a number of persons
claiming as against one, or one person against a num-

ber, and where all were claiming alike." On appeal the court sustained the lower court, saying: "It seems to me to be a very fit case, by analogy, at least, to a bill of peace, for a court of equity to interpose and prevent the unnecessary expense and litigation which would be occasioned, and to decide once for all the validity or invalidity of the certificates upon which the claims of all the parties depend."

The same view of the law is entertained by the Supreme Court of the United States and many of the states. In *Hale v. Allison,* 188 U. S. 77, 23 Sup. Ct. 244, 47 L. Ed. 380, though the court declined to exercise the jurisdiction, it stated with accuracy the rule itself, stating that it did not require a common title, nor community of right or interest in the subject-matter, among the defendants, but only a common interest in the questions of law or fact in controversy. And the statement of law in this case has been approved by the same court at the present term (1907) in the case of *Bitterman v. L. & N. R. R. Co.,* 207 U. S. 205, 28 Sup. Ct. 91, 52 L. Ed.—The following, amongst many other, cases strongly support the rule that, when all the cases may be determined on a single question or defense common to all, the jurisdiction will be exercised.—*Wyman v. Bowman,* 127 Fed. 263, 62 C. C. A. 189; *Milwaukee, etc. v. Bradley,* 108 Wis. 467, 84 N. W. 870; *Sou. Pac. R. R. Co. v. Robinson,* 132 Cal. 408, 64 Pac. 572, 12 L. R. A. (N. S.) 497; *Lehigh R. R. Co. v. McFarlan,* 31 N. J. Eq. 730; *American Cent. Ins. Co. v. Landau,* 56 N.J. Eq. 513, 39 Atl. 400; *L. N. A. & C. Ry. v. Imp, Co.* (C. C.) 57 Fed. 45; *Osborne v. Wis Cent. R. Co.,* (C. C.) 43 Fed. 824; *Deforest v. Thompson,* (C.. C.) 40 Fed. 375; 1 Pom. Eq. §§ 269-274.

We are committed to the same principle in Alabama. In the early case of *Morgan v. Morgan,* 3 Stew. 383, 21

Am. Dec. 638, it is said: "It is not conceived to be necessary, in bills of peace, that there should appear to be any privity or connection between the defendants. There are cases where bills of peace have been brought, though there has been a general right claimed by the plaintiffs, and yet no privity between the plaintiffs and defendants, nor any general right on the part of the defendants." And in the case of *Cleveland v. Insurance Co.*, 151 Ala. 191, 44 South. 37, we used the following language comprehending the rule of Lord Hardwicke: "The jurisdiction of a court of equity will be exercised in suits by a single party against a number of persons to restrain the prosecution of simultaneous actions at law brought against him by each defendant, and to procure a decision of the whole in one proceeding, where all the actions depend upon the same law and facts."

It is insisted that the case of *Turner v. Mobile*, 135 Ala. 77, 33 South. 132, is opposed to the view above expressed. That there are expressions in the opinion to that effect is not to be doubted, but there are other expressions which approve and define with accuracy the very basis of our conclusion in this case. Judge McClellan in that case says: "So, when one party is subjected to or threatened with numerous and vexatious actions at law, or is the victim of numerous, repeated, and continuing wrongs, so that a multitude of suits would be necessary for his redress at law, he may come into chancery, because the necessity for numerous suits or defenses to numerous suits at law is in itself such a wrong and vexation to him as vests him with an equity." This case is founded on this declaration of the law, which is clearly and precisely and accurately stated. In reference to other expressions in the opinion it is sufficient to say that every decision must be read in the light of the exact case before the court, and which it

was intended to decide.—*Cahens v. Virginia,* 61 Wheat.
(U. S.) 553, 16 L. Ed. 770; *K. C. M. & B. R. R. Co. v.
Crocker,* 95 Ala. 430, 11 South. 262. The point and
principle here at issue was not in the least involved in
the *Turner Case.* Judge McClellan in the opening of
his opinion so declares. He says: "There is no pre-
tense that this case falls within the first, second, or
fourth classes" pointed out by Mr. Pomeroy, in which
equitable jurisdiction on account of multiplicity of suits
is allowed. And then he shows that the bill was not
sufficient under the third class. So that the question
in this case, which comes directly within the fourth class,
as defined by Mr. Pomeroy and Judge McClellan, was
not before the court in the *Turner Case,* and was not
and could not have been decided.

The case however of *Tribette v. Railroad Co.,* 70 Miss.
182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 6424,
is directly opposed to our views. That case we consider
as overruled by the subsequent one in the same court
of *Hightower & Crawford v. Railroad Co.,* 83 Miss. 708,
36 South. 83, 102 Am. St. Rep. 476, in which the court
expressly approves the view repudiated in the *Tribette
Case.* It is said in the *Hightower Case*s "We think
the doctrine announced by Pomeroy is sound and clearly
established by the best considered modern cases." After
this repudiation of the *Tribette Case,* by the Supreme
Court of Mississippi, we will not follow the reasoning
of the opinion in that case to point out its deflection
from and opposition, in our opinion, to the ancient
as well as modern view of the extent of the jurisdic-
tion of courts of equity in reference to multiplicity of
suits. That jurisdiction is too well established and too
beneficent, when wisely exercised, to be any longer called
in question.

It would be a strange casus in juridicial evolution to
meet the needs of society if there was no remedy against

[Friedman v. Fraser, et al.]

a party being vexatiously prosecuted at the same time by over 7,000 separate invalid claims held by insolvent plaintiffs, as in the *Sheffield Waterworks Case*, L. 8, 2 Chan. 8, when each case is founded upon the same facts, and when it is alleged and admitted, by the objection to the jurisdiction, that there is a defense common to all the claims. It is to avoid the monstrosity of such a result that the court of chancery extends its plenary jurisdiction to stay the proceedings at law until the question of liability can be determined in one suit, and therefore we hold that the bill in the case was well filed.

The bill in this case was dismissed on motion. The demurrers, therefore, are not before us; nor have we to do more than to say that the bill on its statements has equity on the single ground of preventing the multiplicity of suits unaided by the other matters averred. The decree of the lower court is reversed, and one will be here rendered overruling the motion.

Reversed and rendered.

HARALSON, ANDERSON, and DENSON, JJ., concur.