# Roanoke Guano Co. *v.* Saunders.

### *Bill to Enjoin Action at Law and to Determine Damages.*

(Decided June 29, 1911. 56 South. 198.)

1. *Equity; Jurisdiction; Multiplicity of Suits.*—To give equity jurisdiction on the ground of preventing a multiplicity of suits, a community of interest in the subject matter of the several actions is necessary; community of interest in the question at law and facts involved in the several actions not being enough.

2. *Injunction; Restraining Action.*—In a bill by one maintaining a guano factory, sulphuric fumes from which injure the lands owned separately, to enjoin their separate actions for damages, and have the damages assessed and determined in one suit is not given equity by the additional prayer that if the factory be found to be a nuisance, it be abated; for, while those injured could have maintained a joint bill to abate the nuisance, they could not have recovered damages therein, and they and not the wrong doer, have the right to elect whether they will maintain such a suit or separately sue for damages.

APPEAL from Randolph Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by the Roanoke Guano Company against Hattie Saunders and others, to enjoin several actions at law, and to ascertain and determine the damage suffered by respondents. From a decree by respondents complainants appeal. Affirmed.

LACKEY & BRIDGES, for appellant. Every question presented by the demurrers from 1 to 11 inclusive, is fully answered by the opinion in the case of *Southern Steel Co. v. Hopkins,* 47 South. 274; *Cleveland v. Ins. Co.,* 151 Ala. 191; *Morgan v. Morgan,* 3 Stew. 383; *Kennedy's Heirs v. Kennedy,* 2 Ala. 571; 45 South. 861; 44 South. 161; Pom. Eq. secs. 245-274. Equity has jurisdiction also to prevent a multiplicity of suits where there is a single party on each side of the case, and also

of liability to several suits growing out of the same transaction or subject matter between the same parties. —*Whaley v. Wilson*, 112 Ala. 627. If liable in suits already filed, then complainant will be liable for successive actions of damages by each of the plaintiffs in the suits at law.—*C. of Ga. v. Wyndham*, 126 Ala. 552; *S. & N. v. McLendon*, 63 Ala. 266; *Sloss- S. S. & I. Co. v. Mitchum*, 49 South. 851. It constituted no infringement of the constitutional right of trial by jury.—*Cook v. Schmide*, 100 Ala. 582; *Southern Steel Co. v. Hopkins, supra.*

BARNES & DENSON, and N. D. DENSON, for appellee. The court properly sustained the demurrers to the bill. A demurrer is not an admission of facts not pleaded. or of statements of legal conclusion.—*Sheffield Ry. v. Rand*, 83 Ala. 294; *Manning v. Pippin*, 86 Ala. 357. Community of interest in the subject matter is absolutely necessary in order for equity to take jurisdiction on the ground of multiplicity of suits.—*Turner v. City of Mobile*, 135 Ala. 73; *Hale v. Allison*, 188 U. S. 56; L. R. A. 6 0; 101 Ill. App. 523. This doctrine rests upon the inadequacy of a legal remedy.—140 Fed. 666. A bill in the alternative is no stronger than the weakest of its alternatives.—75 Ala. 363; *David v. Shepherd*, 40 Ala. 587.

MAYFIELD, J.—The appellant owns and operates a fertilizer factory, and uses large quantities of sulphuric acid in manufacturing such fertilizers. The natural and necessary result of the use of these acids is that sulphuric fumes and vapors in large quantities are emitted from the factory, and these gases and vapors are noxious and offensive to the inhabitants of the immediate vicinity, and are more or less injurious, if not destructive, to vegetable life near the said plant.

[Roanoke Guano Co. v. Saunders.]

The appellees, each of whom was the owner of land near the appellant's factory, brought actions in the circuit court of Randolph county, to recover damages for injury to their crops and timber growing upon their lands near the appellant's factory. Thereupon the appellant filed this bill in the chancery court of Randolph county, to enjoin the actions at law and to have the damages of the several plaintiffs assessed and determined in one suit. A temporary injunction was issued, to this effect, upon the filing of the bill. The respondents then demurred to the bill, assigning many grounds thereto, among them, one for want of equity and one for multifariousness. Upon the hearing of the demurrer, it was sustained. Thereupon the complainant amended its bill by making the allegations fuller, and adding to the prayer that, if on final hearing it should be decreed that complainant's plant was a public nuisance, it should be abated. To the amended bill, the respondents again interposed demurrer, assigning the same grounds which were assigned to the original bill, which demurrer was sustained, the bill dismissed, and the temporary injunction dissolved, and from that decree this appeal is prosecuted by the complainant. It was attempted to rest the equity of the bill upon two grounds of equity jurisdiction; first, to prevent and enjoin a multiplicity of suits, and, second, to abate a nuisance.

It has been stated by this court that it has never undertaken to define the jurisdiction of equity to prevent a multiplicity of suits, nor even to lay down the general principles governing the several categories of cases in which that jurisdiction may be invoked, but this court has evinced an inclination toward confining this jurisdiction to a narrow field, in order to conserve and preserve the right of trial by jury.—*Turner v. Mobile*, 135 Ala. 124, 33 South. 132, and cases there cited. Bills of

this character are called bills in the nature of bills of peace, to quiet the rights of parties and to put an end to further litigation.

It was said by this court, in the case of *Turner v. Mobile, supra,* that equity will not take jurisdiction to prevent a multiplicity of suits in order to lessen its own labors or those of other courts; that the court itself has no equity, but that equity must reside in the party filing the bill. It has been said by other courts that to avoid a multiplicity of suits is a ground of equity jurisdiction, but that multiplicity of suits does not mean multitude of suits. The mere fact that many persons have similar or like independent rights or causes of action does not confer the right to invoke equity jurisdiction. Equity has no power to amalgamate several independent legal rights so as to constitute but one equitable right, and thereby allow all to join in equity, on the ground of preventing a multiplicity of suits. The rule is different from that governing cases in which one party is subjected to, or threatened with, a multitude of vexatious actions at law, or is threatened with numerous and continued wrongs, so that many and repeated actions will be necessary; in such cases the multitude of the possible actions at law is, of itself, sufficient to give him the right to redress such wrongs, and to create the equity jurisdiction of multiplicity of suits.

Prior to the publication of Mr. Pomeroy's inestimable work on Equity Jurisprudence, it was thought to be a requisite to the equity of a bill which rested solely upon the ground of preventing or enjoining a multiplicity of actions at law that there should be a mutuality among the many complainants or defendants, as the case might be, as to the subject-matter of the suit; that a mere mutuality as to the facts and the law, in the many cases, was not sufficient. In this work, Mr. Pom-

eroy, after stating the general rule theretofore announced in the text-books on the subject, and in many, if not all of the adjudicated cases, that there must be a mutuality of title to, or a community of interest in, the subject-matter involved, proceeded to state another rule, viz., that there is a class of cases in which a mere community of interests in the questions of law and of fact involved in the general controversy is sufficient to warrant the interposition of equity to settle, in one suit, the several controversies.

Mr. Pomeroy was first taken to task as to the correctness of this proposition by Chief Justice Campbell, of the Supreme Court of Mississippi, in *Tribette's Case*, 70 Miss. 182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642, wherein a great number of property owners had brought suit against the Illinois Central Railroad Company, to recover damages for destruction of their property by fire emitted from that company's locomotives, and wherein the railroad company had filed its bill to enjoin the many actions and to settle the entire controversy, as to liability vel non, and the extent of the damages to the several plaintiffs, in one suit. The equity of the bill was denied by Chief Justice Campbell, who held that the community of interest in the facts and the law involved was not sufficient.—1 Pom. 255-269.

This text was again criticised and declared unsound by this court, in the case of *Turner v. Mobile*, 135 Ala. 73, 33 South. 132, in which it was said that the decisions cited by Mr. Pomeroy did not sustain the proposition announced in the text; that mere community of interest in questions of law and of fact was sufficient. These two opinions—one by McClellan, Chief Justice of Alabama, and the other by Campbell, Chief Justice of Mississippi—are certainly among the leading and best-con-

sidered cases, on the subject of the equity of a bill to prevent a multiplicity of suits, appearing in the reports since Mr. Pomeroy's publication on Equity Jurisprudence.

Unfortunately, however, the text announced by Mr. Pomeroy has been followed in a great number of adjudicated cases, and probably in the majority of the cases in which the exact proposition involved has been passed upon. Among such cases are those of *Southern Steel Co. v. Hopkins,* 157 Ala. 175, 47 South. 274, 20 L. R. A. (N. S.) 848, 131 Am. St. Rep. 20, and *Whitlock v. Yazoo County,* from the Supreme Court of Mississippi, reported in 91 Miss. 779, 45 South. 861. The last two cases clearly support the text announced by Mr. Pomeroy, which was declared unsound by the Supreme Court of Mississippi, in *Tribette's Case,* and by this court in *Turner's Case.* But the decision by the Supreme Court of Mississippi did not overrule its pioneer case of Tribette nor those which cite it or refer to it; neither did this court in *Hopkins' Case,* overrule *Turner's Case;* but Chief Justice Tyson, who wrote the opinion, did say that there are expressions in the opinion of McClellan, C. J., in *Turner's Case,* that are in conflict with what was decided in *Hopkins' Case,* notwithstanding that there are others which support the conclusion in the *Hopkins Case.* He then quotes from the opinion in *Turner's Case,* and concludes by saying that the questions in *Hopkins' Case* comes directly within the fourth class, as defined by Mr. Pomeroy and Judge McClellan. See 1 Pom. Eq. Jur. 255-269. It appears, therefore, that there was no intention on the part of the writer, nor on that of the court, in the *Hopkins Case,* to overrule the *Turner Case;* but, on the other hand, that the court considered the *Turner Case,* or a part thereof, as authority for the decision in the *Hopkins Case.*

[Roanoke Guano Co. v. Saunders.]

After a careful review and comparison of these two cases, we are of the opinion that they conflict. While, of course, they are distinguishable in many respects, yet they are in direct conflict as to the fundamental proposition that a bill to prevent a multiplicity of suits contains no equity, if the parties have a community of interest only in the question of the fact and of law involved, and none in the subject-matter. In other words, the *Turner Case* holds that a community of interest in the subject-matter of the several actions is necessary to give equity jurisdiction, when it is based solely upon the ground of preventing a multiplicity of suits, and that community of interest in the questions of law and of fact involved in the several actions alone is not sufficient; whereas, in *Hopkins' Case,* the exact converse of this proposition is held. In fact, the sole ground of equity cognizance in the *Hopkins Case* was rested upon the community of interest in the questions of fact and of law involved in the 110 suits brought against the complainant in courts of law. There was confessedly and concededly no community of interest in the subject-matter of any two of such actions at law, much less among all. It was for this very reason that the bills in the *Turner Case* and the *Tribette Case,* 70 Miss. 182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642, were held to be without equity. Therefore, after a careful consideration of these two cases, and of the decisions of this court upon this question, as to the necessity of showing mutuality and community of interest in the subject-matter involved, to give equity jurisdiction, we are of the opinion that the two cases are in conflict; that the case of *Turner v. Mobile* announces the correct rule, while that announced in *Hopkins' Case* is not sound; and that the latter case should be, and it is, overruled.

23—173

As we find the decisions of this court and those of the Mississippi court to be in direct conflict as to this question, and find also like conflict among the decisions of other courts, it may not be out of place to state, as briefly as possible, the reasons which induce us to over-rule the *Hopkins Case*. In the first place, the reason and logic, as well as the authorities cited by Chief Justice Campbell in *Tribette's Case,* and those by Chief Justice McClellan, in *Turner's Case,* we have found to be unanswerable. We cannot hope to add to the force of the logic or the reasoning of either of these opinions, but will attempt to review some of the decisions relied upon therein, holding to different views from those expressed in the *Turner* and *Tribette Cases, supra.* We have examined all the cases cited in the opinion in the *Hopkins Case* as being in support of the conclusion therein announced, and in our opinion they do not support it. In nearly all of the cases cited, in which the equity of the bill was supported, the decision rested upon an equity independent of that of multiplicity of suits; and while the bills in those cases were held to contain equity, it was not that alone of preventing a multiplicity of suits. The decision in the case of *Crawford v. Mobile Railroad Co.,* 83 Miss. 708, 36 South. 82, 102 Am. St. Rep. 476, was rested upon the independent equity of the cancellation of an instrument which was obtained by fraud. Likewise the decision in the case of *Sheffield Waterworks v. Yoemans,* L. R. 2 App. Cas. 8, cited and strongly relied upon in the *Hopkins Case,* was based upon an independent equity, to wit, the cancellation of instruments which had been issued to the representatives of 7,315 persons who lost their lives, or who had property injured, and were prosecuting claims against the waterworks company on account of a burst pipe. The actions in that case were not in tort, to recover damages for the negligence of the waterworks company,

but were brought upon the certificates which had been issued to the persons injured, or their representatives, and the bill sought to have these certificates canceled because issued or obtained through fraud; consequently cancellation of the instruments and fraud afforded sufficient equity to the bills in those cases; and only the question of multifariousness was involved, and not the question whether the jurisdiction of the court depended upon the equity of preventing a multiplicity of suits.

The writer of the opinion in the *Hopkins Case* failed to distinguish between cases in which the sole ground of equity jurisdiction depended upon the question of preventing a multiplicity of suits, and those cases which rest upon some other independent equity. The real question involved is multifariousness because of the number of parties, complainants or respondents. In most all the cases cited in the opinion in *Hopkins' Case* the real question involved was multifariousness, and not equitable interference to prevent or enjoin a multiplicity of actions at law. If a bill in a given case rests firmly upon some independent equity, such as the cancellation of instruments, accounting, discovery, or the like, then a community of title or of right or interest in the subject-matter is not requisite to the maintenance of such a bill; but in such case as community of interest in the questions of law and of fact in controversy among the several defendants may save the bill from being objectionable on account of multifariousness, though it does not follow that such a bill would contain equity solely on account of the community of interest in the question of law or fact, and without any community of interest in the subject-matter among the several defendants.

We have found but few cases which support the doctrine announced in the *Hopkins Case,* among which may

be mentioned that of *Whitlock v. Yazoo*, 91 Miss. 779, 45 South. 861, as being probably the nearest in point. So far as appears from the report of that case, there was no independent equity upon which to rest the bill, yet it was upheld as containing equity; for, while there was no community of interest in the subject-matter, there was a community of interest in the facts and the law involved. The decision in that case was written by Chief Justice Whitfield, of the Supreme Court of Mississippi, and while it is very brief, and does not mention or refer to to *Tribette Case*, it is directly opposed to the holding in that case.

It has been pointed out by the annotators, in notes to the report of the *Hopkins Case*, 157 Ala. 175, 47 South. 274, 20 L. R. A. (N. S.) 848, 131 Am. St. Rep. 20, that the cases and authorities cited by this court as supporting the conclusion reached are inapt, and that some of them announce the opposite conclusion. We therefore refer to these notes, which we think conclusively show the error of our former holding in the *Hopkins Case*, and establish the correctness of the holding in the *Turner* and *Tribette Cases, supra.*

While we have examined many cases on this vexed and disputed question, we have not examined all; but we have reached the conclusion that the principles announced in the *Turner* and *Tribette Cases* are correct, and should be adhered to by this court. While it is true that the facts and the principles of law involved in the *Hopkins Case* are different, to some extent, both in kind and degree, from those involved in the *Turner* and *Tribette Cases,* and also different from the facts and the law involved in the case now under consideration, we are convinced that the decision in the *Turner Case* was largely, if not wholly, based upon the doctrine that equity has no jurisdiction to prevent a multiplicity of

suits, in the absence of some community or mutuality of interest in the subject-matter involved, and when there is no other independent equity upon which the bill can rest. We have also reached the conclusion that many of the cases cited in the text and in the opinions of the adjudicated cases, holding to the contrary, have failed to note the distinction which we have tried to point out in this case, and clearly appearing in the *Turner* and *Tribette Cases.*

In Mr. Pomeroy's work the rule is stated to be that care should be taken not to confound the jurisdiction of equity to prevent a multiplicity of suits with the general principle of equity that, when a court of equity has acquired jurisdiction for one purpose, or of a part of a general subject-matter, it may then go on and determine the whole controversy and give complete relief. The failure to observe this distinction is, in our opinion, the cause of the many conflicting decisions upon the question as to the sufficiency of a bill to prevent a multiplicity of suits. The conflict and variance of authorities, both text-books and adjudicated cases, upon this question, occasioned by the failure to observe this distinction, pervades even the statements of the law by the same text-writer and the decisions of the same court.

It often happens that equity takes or acquires jurisdiction of a certain subject-matter or controversy for one purpose, and, in order to grant complete relief, finds it necessary to add other parties to the suit, or maybe to enjoin the prosecution of other suits which would prevent complete relief or embarrass the court in administering such relief; but it does not follow that in such case a bill would have equity if filed for the sole purpose of preventing the prosecution of such suits. Multifariousness in equity pleading and practice and equity

jurisdiction to prevent a multiplicity of suits are kindred subjects, but not the same subject. A given bill may not be objectionable as for multifariousness, although had to prevent a multiplicity of suits, if it rests solely upon this one equity jurisdiction.

We therefore conclude that the safer rule is to adhere to the former doctrine that, in order to support a bill in equity upon the sole ground of preventing a multiplicity of suits, the bill must show some community or mutuality of interest in the subject-matter of the controversy in which the various litigants are interested; that a mere community of interest in the questions of law and of fact involved is not sufficient in such cases.

It is not to be doubted that there are many and high authorities to the contrary; but it seems to have been uniformly held that a community of interest in the law involved is not alone sufficient to confer equity jurisdiction to prevent a multiplicity of suits, and we think that adding thereto a mere community of interest in the facts involved, without any community or mutuality of interest between the litigants in the property rights or other subject-matter involved, should not confer jurisdiction.

It was said by the English court, more than a hundred years ago, that a court of equity will not take cognizance of distinct and separate claims of different persons in one suit, though they stand in the same relative situation as to both the facts and the law involved.—1 East, 220, 227. It was also held by the same English court that where a number of persons claimed one right in one subject, as a bill of peace, or a bill in the nature thereof, it might be maintained to prevent a multiplicity of suits and to put an end to the litigation; but that such a bill could not be maintained where the demands claimed against the defendants, although of the same

nature, were entirely distinct from and unconnected with those of any other defendant, and that in such cases each defendant had a right to object to the joining of any distinct and unconnected causes of action.— 2 Ans. 469.

It was also decided at an early date, by the Supreme Court of New Jersey, that a plaintiff could not maintain an action against several defendants, as to matters of different natures, where there was no community of interest in the subject-matter; and that the mere fact that the plaintiff had a common interest with all the defendants in questions of fact and of law involved gave that court no jurisdiction upon any principle of equity. —*Marselis v. Morris Canal & Banking Co.*, 1 N. J. Eq. 31. It was also held by that court that several persons could not maintain a bill in equity against one defendant, even to restrain a nuisance by such defendant, in consequence of the special injury done to each particular defendant; but that they might enjoin a nuisance, such as a slaughter-house in a populous district, because in such case the injury was a common one, and the object to be obtained was to give protection to each suitor in the enjoyment of common rights.—*Demarest v. Hardham*, 34 N. J. Eq. 469. These New Jersey cases, we think, clearly illustrate the rule and show the community of interest necessary to support such bills.

It should be constantly borne in mind that the single fact that a multitude of suits may be prevented by the assumption of jurisdiction by equity is not, in all cases, enough to sustain the equity of a bill. It may be that, while such a bill will prevent a multitude of suits, it will nevertheless be attended with greater inconvenience and detriment to the defendants than benefit or convenience to the single plaintiff.

In determining this vexed question, courts should keep in mind the question whether such consolidation of many suits at law, by one bill in equity, will confuse the issues to be there tried; and see to it that too many questions of interest are not brought into one case, and that the constitutional guaranty of the right of trial by jury shall not be denied. Every citizen has, or should have, the right to try his case with the issues made clear and well defined. If a consolidation can be had without interfering with this right, and the other requisites of such bills shall be made to appear, the bill should be allowed; otherwise it should be denied.

The inability of litigants who are residents to pay costs should not prevent them from having their rights adjudicated in courts of law, and tried by a jury of their peers. It is not the purpose of our government, nor the effect of our laws, to measure a citizen's liberty or privilege to litigate his rights in the courts of this state by his financial or pecuniary condition. Justice should be administered in orderly and due course, alike to the rich and to the poor.

While courts of equity may and should exercise some discretion as to when they will take jurisdiction to prevent a multiplicity of suits, yet this discretion is not arbitrary, but depends upon the question of the rights of all the litigants, as well as upon that of the convenience and expedition of the court. But the constitutional right of the citizen should be always placed beyond and above considerations such as the convenience, expedition, of court or litigant, or even the pecuniary loss of the complainant. Neither the convenience of, nor the saving of costs to, a tort-feasor, should be allowed to be set off against the constitutional right to a jury trial of the persons who are injured in consequence of this tort, though they all suffer similar injuries as the result

[Roanoke Guano Co. v. Saunders.]

of one and the same tort. The law is fixed and settled that, in order to avoid a jury trial to recover damages in each of several cases, the result of one and the same tort, the case made by the bill seeking to avoid or prevent a multiplicity of such actions must be brought within one of the well-recognized and established grounds of equity jurisdiction as to which the right of trial by jury does not now exist and had never existed.

The amended bill is sought to be given an additional claim to equity by consenting to, or requesting that, complainant's fertilizer factory be declared a nuisance, and abated as such, if the court, upon a final hearing, should find the law and the facts to justify such a decree. These allegations as to declaring or abating a nuisance cannot serve to give the bill equity upon this ground. The petition and prayer comes from the wrong party and source. A tortfeasor who is sued in a court of law to recover damages for his wrongs will not be heard in a court of equity, when he asks that court to enjoin the actions thus brought against him in the court of law, upon the ground that his torts or wrongs constitute a nuisance. Neither his convenience, nor the saving to him of the costs of a number of suits, can be set off against the right of the persons who have suffered in consequence of his wrong, to recover damages of him in a court of law, nor against their right to have a jury of their peers award and fix the amount of damages to which they are entitled, even though such wrong could and should be held to constitute, and be abated as, a nuisance. The persons injured in consequence of such wrong are the ones who have the right, if such right exists, to elect as to whether they will proceed in a court of law to recover damages, or in a court of equity to abate a nuisance. They also (and not he) have the right to elect whether they will proceed jointly to abate the

nuisance in a court of equity, or whether they will proceed severally, in actions at law and before a jury, to recover their damages. Certain it is that the wrongdoer cannot make the election, nor is he in position to ask a court of equity to enjoin the actions at law, in order to serve his convenience and to save costs of litigation to him, or to expedite the business of the courts.

This bill is anomalous, in that the complainant is the party who created and maintains the nuisance, and who asks that a court of equity take jurisdiction to abate it and to award damages, in order to prevent a multiplicity of actions from being brought or prosecuted against him to recover damages for the nuisance. The maxim that "He who does iniquity will not be awarded equity," is certainly applicable to such a bill as this. Moreover, it is settled law that, if the parties were reversed, and the bill sought both to abate the nuisance and to award damages to a multitude of parties who were injured in consequence of the nuisance, the complainant could not then maintain the bill against the wrongdoer. The law is well settled to the effect that, where two or more persons, having separate and distinct tenements, are injured by a common nuisance which affects each in the same way, they may properly join as complainants in a bill filed solely for injunctive relief, but they cannot recover damages in such suit; and that where there is no community of interest in the subject-matter, and the object of the suit is to restrain something which works a distinct and special, but not separate, injury to the property of each, they cannot join in such suit.—*Demarest v. Hardham,* 34 N. J. Eq. 469; *Rowbotham v. Jones,* 47 N. J. Eq. 337, 20 Atl. 731, 19 L. R. A. 663; *Brady v. Weeks,* 3 Barb. (N. Y.) 157.

While the bill in this case is distinguishable in some respects from the bill in the *Hopkins Case,* yet in both

[Cook, et al. v. Atkins.]

the bills rest upon the same fundamental propositions that community of interest among the several respondents, as to the questions of fact and of law involved in the numerous actions at law, is sufficient to confer equity jurisdiction to prevent or enjoin such actions as a multiplicity of suits; and that community or mutuality of interest between the respondents, in the subject-matter or property rights in the several suits, is necessary to the equity of a bill which rested solely upon the ground of preventing a multiplicity of suits. This, we believe, is not the law. The decision in the *Hopkins Case* was therefore wrong, and it is hereby expressly overruled; which necessarily results in the affirmance of the decree of the chancellor, dismissing the bill in this case for the want of equity. Since this case was decided, but before it was put out, the *Hopkins Case,* on second appeal, has been decided in accordance with this opinion.

Affirmed.

DOWDELL, C. J., and MCCLELLAN and SOMERVILLE, JJ., concur.