Smith Fuller et al., Appellants, v. D. T. Garber et al., Appellees.

Gen. No. 9,094.

Opinion filed April 20, 1938.   Rehearing denied July 26, 1938.

R. C. De Mange, of Bloomington, for appellants.

Whitmore & Whitmore, of Bloomington, for certain appellee.

Hal M. Stone, of Bloomington, and Sigmund Livingston, of Chicago, for certain other appellee; Lederer, Livingston, Kahn, Adler & Adsit, of counsel.

Mr. Presiding Justice Fulton delivered the opinion of the court.

This is a suit in equity filed on January 27, 1922, in which the plaintiffs charge that they were induced to buy shares of stock in the defendant corporation by fraudulent misrepresentation of its financial condition, earning capacity and earnings. The bill of complaint sought to rescind the purchase of stock and to recover back the purchase price of the same from the corporation and the directors and officers who caused the stock to be sold and the misrepresentations to be made.

The answer of the appellees denied any conspiracy or fraud and alleged that complainants failed in proper time to elect to rescind their purchase and therefore were guilty of laches and that there was a lack of proper parties.

The cause received the attention of this court on a former appeal from the ruling of the trial court, sustaining a demurrer to the bill of complaint. That case was reported in 232 Ill. App. 642 (Abst.). This court held that equitable jurisdiction should be retained to avoid a multiplicity of suits and reversed the action of the trial court.

A companion suit, *Wilkinson v. Heberling*, 231 Ill. App. 516, arose out of a similar statement of facts and was made the basis of the ruling in this case.

The allegations of fact contained in the bill in complaint are almost identical with those in the case of *Wilkinson v. Heberling, supra* and for the detail of such allegations we refer to pages 518–523 of that opinion. There were one hundred and eighty-one complainants and eighty-six of those parties have joined in this notice of appeal. The cause was referred to a special master in chancery to report the evidence and his conclusions. Before the evidence was all completed, the special master was stricken with illness and unable to conclude his report. The evidence taken before the special master was read before the chancellor and additional evidence was heard in open court. A decree was entered dismissing the bill for want of equity on May 18, 1935, which decree the appellants seek to reverse by this appeal.

One of the material allegations in the bill of complaint was the charge of conspiracy. Without the proof of conspiracy most of the elements concerning misrepresentation were incompetent. Conspiracy has been defined to be a confederacy of two or more persons to accomplish a lawful purpose by some unlawful means. When a conspiracy has once been established, every act or declaration of any of the conspirators in furtherance of the common purpose is regarded as an act binding on all. *People v. Link,* 365 Ill. 266.

The story of the corporation from its original incorporation in 1912 is not one of prosperity or success. It started out as the Illinois Silo Company with an authorized capital of $100,000, about half of which was fully paid. It was engaged in the business of assembling and selling wooden stave silos. The years were not profitable ones and the silo business decreased and dwindled so that in the summer of 1916 the company looked around for new lines of business and decided to manufacture a new tractor cultivator. The corporation was inadequately financed and short of capital,

so that in order to finance the new venture it was voted to increase the capital stock from $100,000 to $500,000. Beginning in 1917 and on through most of the year 1920 an intensive stock-selling campaign was carried on, in behalf of the corporation. Presumably to facilitate the sale of stock a dividend of one per cent was authorized at a meeting of the directors, held on July 10, 1917 to be paid from surplus, and every two months thereafter until the further order of the board. In 1918 the directors voted to increase the authorized capital to $2,500,000. The manufacture of the tractor cultivator had not been a success and the company embarked on the manufacture and sale of a farm tractor.

In March, 1918, the dividend rate was increased from 6 per cent to 8 per cent. A very elaborate plan for the manufacture and sale of tractors and similar articles of machinery was undertaken. A large plant was erected; sales agencies and branch offices were established. The plan of the corporation proved to be a failure and glaring acts of mismanagement, if not misconduct, were proven by the minutes of the corporation, and by documentary evidence. No dividends were paid after February, 1920.

In June, 1920, the production of tractors ceased. In the latter part of the year 1919 and the fore part of the year 1920, the company was in serious financial difficulty and the appellee Heberling lent his personal credit at the American State Bank of Bloomington to raise the sum of $15,000 in behalf of the corporation. Later in the year 1920, several of the directors put up personal notes, amounting to nearly $100,000 to settle up the corporation obligations at the banks. To secure themselves for these advances the directors, by a resolution, authorized the execution of a mortgage to themselves on all the corporate real estate, fixtures and machinery.

The company continued to sell stock throughout the year 1920 and mailed encouraging reports to its stockholders.

After the filing of the mortgage in June, 1920, the creditors of the corporation became alarmed and sent an attorney to investigate the condition of the company. After many conferences and various meetings with the directors the creditors, through their attorney James Rosenthal, took over the affairs of the corporation. The directors, including most of the appellees, resigned and six new directors were elected, all representing creditors. This change in the organization was made in January, 1921. Foreclosure proceedings were instituted in March, 1921 upon the mortgage above mentioned and resisted by the new officers.

The court upheld the mortgage lien and at the sale the property covered by the mortgage was bid in at the sum of $25,000. On May 3, 1921, a stockholders' meeting was called for the election of new directors and for reorganization of the corporation. In 1922, the company was declared to be a bankrupt and on January 27, 1922, this suit was started in the circuit court of McLean county.

It is the contention of the appellants that the directors and officers of the corporation, with full knowledge of its financial condition, fraudulently planned and designed to sell a large amount of stock to the public, and as a means in aid of sale of said stock declared dividends, to be paid out of the capital, included padded statement of assets to show the financial condition and other means of misrepresenting the exact financial status to prospective stockholders.

To our minds the important question in the case is whether or not the acts complained of constituted a conspiracy on the part of the appellees. Some of the active managers and officers of the company were not made defendants in this proceeding. The testimony of

the appellants was largely along the same lines; that the stock salesmen represented to them that the company was on a good, sound, financial basis; that it was paying dividends at the rate of 8 per cent per annum; that the directors and officers were men of unquestioned integrity and ability; that the business was in a flourishing condition and that they relied upon statements of that character in purchasing the stock.

It is not shown, however, that any of the appellees in any manner secured any of the proceeds from the sale of the stock, nor any other profit whatever, outside of the dividends paid upon their stock holdings. On the contrary, it is shown that some of the appellees loaned their financial aid in support of the company. Many of them advanced money or credit to the corporation, which was at least evidence of their faith in the prospects or eventual success of the enterprise.

It is possible that many of the appellants may have had a right of action for damages on the grounds of fraud and deceit, and this is especially true as against some of the officers and directors who are not parties to this suit but were in direct charge of the affairs of the company and participated in the acts complained of to a greater degree than the appellees.

The testimony of such parties is largely relied upon by the appellants in this appeal, although the material parts of their evidence was denied by the appellees. ''While conspiracy may be proved by indirect and circumstantial evidence, such evidence must be clear and convincing, and if the facts and circumstances relied upon are as consistent with innocence as guilt, it is the duty of the Court to find that the conspiracy has not been proved and to enter a decree dismissing the bill for want of equity.'' *Tribune Co. v. Thompson,* 342 Ill. 503.

The action of the directors of this company, including the appellees, is subject to severe criticism, but

the proof running through a long period of years, is not of such a clear and convincing character as to establish any real conspiracy.

Even though it be conceded that some evidence of a conspiracy might be inferred from the testimony in this case, it seems to us there is one rather good reason why the appellants should not succeed in this appeal. The law of Illinois requires that where a party desires to rescind a sale of stock on the ground of fraud, he must act promptly and within a reasonable time. The testimony shows that many of the appellants became suspicious of the actual financial condition of the company two or three years before the suit was commenced. Dividends were not paid after February, 1920. The company was taken over by creditors in January, 1921. On May 3, 1921, a special stockholders' meeting was held and very largely attended, many of the appellants were present. At this meeting detailed reports concerning the condition of the corporation were thoroughly and exhaustively discussed. It was there stated that the corporation had never made a profit; that dividends were paid from moneys realized from the sale of stock; that fictitious values had been put upon the books as assets of the corporation; that the stockholders had been defrauded in the sale of stock, and that the new board of directors were resisting the foreclosure of the mortgage which secured the notes given to the officers and the directors for money advanced to the corporation. Plans for the future operation of the company under the new board of directors were presented and a comparative financial statement sent to each stockholder. On June 13, 1921, the secretary of the corporation sent each stockholder a letter, in which a full report of the stockholders' meeting held on May 3rd was enclosed. In that letter the secretary stated the number of stockholders present, the election of a new board of directors and other details

concerning the meeting, and concluded with the statement that it was the concensus of opinion of those present that the business be continued and that the attorney for the company proceed with their effort to have the mortgage set aside. The letter also included the names of the directors elected for the ensuing year.

The disclosures and the facts discussed at the May 3rd meeting in 1921 were sufficient to afford every stockholder knowledge of the financial condition of the company and certainly ample notice to put any person on inquiry.

It is apparent that the stockholders chose to retain their stock and to give the new board of directors and officers an opportunity to make good on their promises that the mortgage above referred to would be set aside and the business conducted upon a businesslike basis. None of the appellees had anything to do with any of the promises or representations made at that meeting. The corporation had been in the hands of the creditors since January, 1921. This suit was started to the February Term, 1922, of the circuit court of McLean county. Nearly a year had elapsed since the stockholders' meeting in May, 1921.

We believe that the stockholders elected to give the new management an opportunity to operate the company and relied upon their making a success. If they planned to rescind the sale of stock to themselves the law imposed upon them the duty of taking some action promptly upon learning the facts concerning the fraudulent representations they rely upon. In equity they ought not to be permitted to await the outcome of the new venture by the new board of directors and officers before starting suit.

The failure to institute suit or to take other prompt action now bars their right to relief in this suit. The chancellor, who tried this case, is reported to have spent 30 days in listening to the testimony read from

the record and hearing the arguments of counsel and from our study of the voluminous record in this case we believe his decree dismissing the bill of complaint for want of equity was entirely warranted and sustained by the record in this cause. The decree of the trial court is therefore affirmed.

*Affirmed.*